1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   20827 North Cave Creek Road, Suite 101
3  Phoenix, AZ  85024

4  Telephone:  (602) 482-4300
   Facsimile:    (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Kimberly A. Watson*

7
                    **UNITED STATES DISTRICT COURT**
8
                         **DISTRICT OF ARIZONA**
9

10  Kimberly A. Watson,                          Case No.

11              Plaintiff,                        **COMPLAINT**

12        v.

13  Hartford Life and Accident Insurance
    Company, Fidelity National Financial, Inc.,
14  Fidelity National Financial, Inc. Employee
    Disability Plan,
15
                Defendants.
16

17        Now comes the Plaintiff Kimberly A. Watson (hereinafter referred to as "Plaintiff"),

18  by and through her attorney, Scott E. Davis, and complaining against the Defendants, she

19  states:

20                              *Jurisdiction*

21        1.        Jurisdiction of the court is based upon the Employee Retirement Income

22  Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23  Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24  employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

                                     -1-

1    U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of

2    the United States.

*Parties*

4            2.      Plaintiff is a resident of Yuma County, Arizona.

5            3.      Upon information and belief, Defendant Fidelity National Financial, Inc.

6    (hereinafter referred to as the "Company") sponsored, subscribed to and administered a

7    group long term disability insurance policy, which was fully insured and administered by

8    The Hartford (hereinafter referred to as "Hartford").   The specific Hartford long term

9    policy is known as group policy number GLT673816.   Upon information and belief, the

10   Company's purpose in subscribing to the Hartford policy was to provide disability

11   insurance for its employees.   Upon information and belief, the Hartford policy may have

12   been included in and part of the Fidelity National Financial, Inc. Employee Disability

13   Plan (hereinafter referred to as the "Plan") which may have been created to provide the

14   Company's employees with welfare benefits.   At all times relevant hereto, the Plan

15   constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

16           4.      Upon information and belief, the Company or Plan may have delegated

17   responsibility for the plan and/or claim administration of the policy to Hartford.   Plaintiff

18   believes that as it relates to her claim, Hartford functioned in a fiduciary capacity as the

19   Plan and/or Claim Administrator.

20           5.      Upon information and belief, Plaintiff believes Hartford operated under a

21   conflict of interest in evaluating her claim due to the fact it operated in dual roles as the

22   decision maker with regard to whether Plaintiff was disabled as well as the payor of

23

24

25

26

1  benefits; *to wit,* Hartford's conflict existed in that if it found Plaintiff was disabled it was

2  also liable for payment of those benefits. [1]

3      6.      The Company, Plan and Hartford conduct business within Yuma County and

4  all events giving rise to this Complaint occurred within Yuma County.

5                              *Venue*

6      7.      Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28

7  U.S.C. §1391.

8                      *Nature of the Complaint*

9      8.      Incident to her employment, Plaintiff was a covered employee pursuant to

10  the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7).

11  Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to

12  §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits

13  she may be entitled to as a result of being found disabled.

14      9.      After working for the Company as a loyal employee, Plaintiff became

15  disabled on or about August 8, 2007 due to serious medical conditions and was unable to

16  work in her designated occupation as an Account Servicing Supervisor/HR Administrator.

17  Plaintiff has remained disabled as that term is defined in the relevant policy continuously

18  since that date and has not been able to return to any occupation as a result of her serious

19  medical conditions.

20

21

22  [1] "A plan administrator's dual role of both evaluating and paying benefits claims creates

23  the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also

24  exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to

25  administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

26

1

2

3

10.   Following her disability, Plaintiff applied for and received short term disability benefits under the relevant short term disability policy, which were awarded through February 13, 2008.

4

5

11.   Plaintiff thereafter applied for long term disability benefits under the relevant Hartford policy.

6

7

12.   The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

8

9

"Disability or Disabled means that during the Elimination Period and for the next 24 months you are prevented by:

10

11

12

1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy,

13

14

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

15

16

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation."

17

18

19

13.   In support of her claim for long term disability benefits, Plaintiff submitted medical records to Hartford from her treating physicians which supported she met the relevant definition of disability under the policy.

20

21

22

14.   In a letter dated March 31, 2008, Hartford notified Plaintiff it had approved her claim for long term disability benefits.  Plaintiff received long term disability benefits from February 14, 2008 through February 13, 2010.

23

24

25

15.   As part of its ongoing evaluation of Plaintiff's claim, Hartford notified Plaintiff in a letter dated May 11, 2010, she no longer met the relevant definition of disability and was denying Plaintiff's claim for long term disability benefits.  Hartford's

26

1   determination to deny Plaintiff benefits erroneously relied on an Attending Physician's

2   Statement on or about March 11, 2010 completed by Plaintiff's treating physician.

3        16.    Hartford's May 11, 2010 denial letter confirms it failed to provide a full and

4   fair review pursuant to ERISA because it completely failed to reference, consider, and/or

5   selectively reviewed and de-emphasized most, if not all of Plaintiff's evidence.  Hartford's

6   determination was also erroneous and unlawful because Plaintiff's medical condition had

7   not improved in any meaningful way which would have allowed a return to work [2] from

8   the time it originally evaluated and approved Plaintiff's long term disability claim; *to wit*,

9   Plaintiff remained unable to engage in any occupation.

10        17.    Pursuant to 29 U.S.C. § 1133, Plaintiff timely appealed the May 11, 2010

11   denial of her claim for long term disability benefits in a letter dated October 26, 2010.  In

12   support of her appeal, Plaintiff submitted additional medical information and lay witness

13   affidavits which demonstrated she was unable to engage in any occupation as set forth in

14   the relevant Hartford long term disability policy.

15        18.    On appeal, Plaintiff submitted a June 19, 2010 narrative letter authored by her

16   treating physician, board certified in both internal medicine and rheumatology, who opined,

17   "given [Plaintiff's] history and chronic nature of her condition, it is reasonable to assume

18   that she has been unable to work in any occupation since August 7, 2007," and "given

19

20   _____

21   [2] *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586 (8th Cir. 2002) (holding once the

22   claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable); *see also*, *Regula v. Delta Family-Care*

23   *Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001); *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); and *Levinson v. Reliance Standard,* 245 F.3d

24   1321 (11th Cir. 2001) (placing burden on insurer to establish claimant's ability to work).

25

26

1   [Plaintiff's] age, her chronic medical conditions, and other factors it is reasonable to

2   assume she will be unable to sustain any gainful employment indefinitely."

3         19.    In the June 19, 2010 narrative letter, Plaintiff's treating physician clarified his

4   opinion in the March 11, 2010 Attending Physician's Statement by concluding, "I have to

5   admit that I might be mislead [sic] when completing my prior March 11, 2010 Attending

6   Physician Statement, when I stated [Plaintiff] was capable of sitting for 6 hours, standing

7   for 1 hour and walking for 1 hour out of an eight hour workday, on a consistent and reliable

8   basis, day after day, week [after] week.  I believe that she is unable to do this task on a

9   reliable, consistent basis day to day, and she would have days when she could not get up

10  from bed, or periods of time when she would have to lay down."

11        20.    In support of her appeal, Plaintiff submitted a June 4, 2010 Functional

12  Capacity Evaluation with a qualified physical therapist.  The physical therapist confirmed it

13  was his opinion, "[Plaintiff's] tests indicate inability to perform tasks, even at the sedentary

14  work level, due to her restrictions and limitations, even on a part time basis" (original

15  emphasis).

16        21.    In further support of her appeal, Plaintiff submitted to Hartford a July 6, 2010

17  letter from the Social Security Administration in which Plaintiff was approved for Social

18  Security Disability Insurance Benefits after that agency determined she was unable to

19  engage in any gainful occupation due to her medical conditions.

20        22.    In further support of her appeal, Plaintiff submitted an August 25, 2010

21  vocational report with a qualified vocational expert.  The vocational expert opined, "it is

22  clear from the medical records that [Plaintiff] is incapable of returning to the workforce,"

23  and "fully meets the strict criteria set forth in her disability policy or in fact any such policy

24  related to matters of disability."

25

26

1        23.    In further support of her appeal, Plaintiff submitted an October 15, 2010

2  affidavit, authored by Plaintiff's husband, in which he states, "[t]here is no question in my

3  mind she is currently unable to work in any occupation and has been for a few years."

4        24.    In a letter dated November 17, 2010, Hartford notified Plaintiff it had referred

5  her claim to its appeals unit.

6        25.    In a letter dated December 23, 2010, Hartford notified Plaintiff it had referred

7  her claim for a medical records only (paper) review.

8        26.    In a letter dated January 25, 2011, Hartford notified Plaintiff it had finished its

9  review of Plaintiff's claim and had upheld its decision to deny Plaintiff's claim for long

10  term disability benefits.  Hartford's denial was erroneous and unlawful because Plaintiff's

11  medical condition had not improved in any way which would have allowed a return to any

12  type of work from the time Hartford originally evaluated and approved Plaintiff's long term

13  disability claim. [3]

14        27.    In the January 25, 2011 denial letter, Hartford never specifically addressed

15  why its determination was that Plaintiff was not disabled while Social Security found

16  Plaintiff was disabled from working in any occupation.  Hartford's failure to adequately

17  consider Plaintiff's Social Security approval is a violation of ERISA [4] and Ninth Circuit

18  case law.

19

20  [3] *See McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586 (8th Cir. 2002) (holding that

21  once the claimant establishes an entitlement to benefits, absent changed circumstances, the propriety of a termination is questionable); *see also Regula v. Delta Family-Care*

22  *Disability Survivorship Plan,* 266 F.3d 1130 (9th Cir. 2001), *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835 (8th Cir. 2001); and *Levinson v. Reliance Standard,* 245

23  F.3d 1321 (11th Cir. 2001) (holding that the burden is placed on insurer to establish

24  claimant's ability to work).

25  [4] *See Montour v. Hartford Life & Accident Ins. Co.,* 588 F.3d 623, 634 (9th Cir. 2009).

26

28.     Hartford has notified Plaintiff that she has exhausted her administrative remedies and can file a civil action in federal court pursuant to ERISA § 502(a).

29.     In evaluating Plaintiff's claim on appeal, Hartford had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [5]

30.     Plaintiff believes it was unreasonable and evidence of Hartford's conflict of interest for Plaintiff's claim to be referred to persons that may have an incentive to protect their consulting relationships with the disability insurance industry by providing medical review reports and opinions which selectively review and ignore evidence in order to provide opinions and reports which are favorable to insurance companies such as Hartford and which supported the denial of Plaintiff's claim.   "ERISA imposes higher-than-marketplace quality standards on insurers" [6] and Hartford's referral of Plaintiff's claim on appeal to its own employees may have fallen well below any reasonable quality standard and therefore, denied Plaintiff of a full and fair review.

31.     Plaintiff questions the independence, impartiality and bias of Hartford's own employees to fully and fairly review her claim and she believes these opinions are adversarial because of these individuals' conflicts of interest as employees.   Plaintiff

---

[5] ERISA sets a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan.  *See* 29 U.S.C. § 1104(a)(1). ERISA simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials." *See Firestone*, 489 U.S. at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting 29 U.S.C. § 1133(2)).  ERISA also supplements marketplace and regulatory controls with judicial review of individual claim denials. *See* 29 U.S.C. § 1132(a)(1)(B); and, *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008).

[6] Id.

1    believes Hartford's financial conflict of interest is a motivating factor in why it referred

2    Plaintiff's claim to its own employees for review.

3          32.    Plaintiff believes the reason Hartford provided an unlawful review which was

4    neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due

5    to its conflict of interest and this conflict is a reason her disability claim was denied.

6          33.    Plaintiff is entitled to discovery regarding the aforementioned conflicts of

7    interest of Hartford and any individual who reviewed her claim and the Court may properly

8    weigh and consider evidence regarding the nature, extent and effect of *any* conflict of

9    interest which may have impacted or influenced Hartford's decision to deny her claim.

10         34.    With regard to whether Plaintiff meets the definition of disability set forth in

11   the Plan, the Court should review the evidence in Plaintiff's claim *de novo,* because even if

12   the Court concludes the Plan confers discretion, the unlawful violations of ERISA

13   committed by the Plan and its administrators as referenced herein are so flagrant they

14   justify *de novo* review.

15         35.    As a direct result of Hartford's decision to deny Plaintiff's disability claim,

16   she has been injured and suffered damages in the form of lost disability benefits in addition

17   to other potential employee benefits she may have been entitled to receive through or from

18   the Plan and/or Company as a result of being found disabled.

19         36.    The evidence supports a finding that Plaintiff meets the "any" occupation

20   definition of disability in the policy.

21         37.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

22   prejudgment interest, reasonable attorney's fees and costs from Defendants.

23         38.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum

24   pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for

25   losses she incurred as a result of Defendants' nonpayment of benefits.

26

39.     As a direct result of Hartford's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

WHEREFORE, Plaintiff prays for judgment as follows:

A.      For an Order requiring Defendants to pay Plaintiff disability benefits pursuant to the "any" occupation definition of disability as a result of her meeting both definitions of disability in the policy from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon as well as any other employee benefits she may be entitled to from the Plan and/or Company as a result of being found disabled;

B.      For an order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the Plan or policy conditions for termination of benefits;

C.      For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.      For such other and further relief as the Court deems just and proper.

DATED this 24th day of May, 2011.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff